UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x

TRINA ADAMS,

                                Plaintiff,

                  -and-

NEW YORK STATE – UNIFIED COURT SYSTEM,
and the OFFICE OF COURT ADMINISTRATION,

                            Defendants.

----------------------------------------------------------------------x

Civil Action No.: 22-9739

**COMPLAINT**

**JURY TRIAL DEMANDED**

TRINA ADAMS (hereinafter "Plaintiff"), by her attorneys, Pitta LLP, alleges the following upon information and belief against the NEW YORK STATE – UNIFIED COURT SYSTEM (hereinafter "UCS"), and the UCS OFFICE OF COURT ADMINISTRATION (hereinafter "OCA") (collectively, "Defendants").

## NATURE OF ACTION

1.    This is an action for compensatory and punitive damages to redress Defendants' unlawful employment practices against Plaintiff, including its discrimination and retaliation due to her religion in violation of Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as amended, 42 U.S.C. §§ 2000e, *et seq.*

2.    Plaintiff alleges, *inter alia*, that Defendants removed her from payroll and terminated her employment with Defendant UCS on or about April 4, 2022 after being directed to undergo an unlawful religious testing process implemented by Defendants and a failure by Defendants to engage in a good-faith interactive dialogue with Plaintiff about her request for a religious-based reasonable accommodation to a vaccine mandate.

3.    This matter is not about whether vaccines work or whether public-sector employers, such as Defendants, can unilaterally impose vaccine mandates; rather, the heart of this matter

concerns the fact that any government vaccine mandate must still comply with federal law regarding reasonable accommodations.

4.      Defendants willfully and systematically violated the enumerated statutory provisions with respect to its application of its COVID-19 vaccine requirement on Plaintiff, an individual who has and continues to uphold the tenets, practices, and beliefs of Christianity.

## JURISDICTION AND VENUE

5.      The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. §§ 1331, and 1343(a)(3)-(4).

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

## ADMINISTRATIVE PROCEDURES

7.      Plaintiff has fully complied with all prerequisites to jurisdiction in this Court under Title VII.

8.      The instant action is based upon a charge filed with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") by Plaintiff (EEOC Charge No. 520-2022-02763).

9.      On August 19, 2022, Plaintiff received the notice of right to sue issued by the EEOC in connection with the previously filed charge of discrimination.

10.     This lawsuit was commenced within 90 days of Plaintiff's receipt of this notice from the EEOC by the filing of the instant pleading.  Annexed hereto and made a part hereof as Exhibit "A" is a copy of the EEOC's Right to Sue letter.

**PARTIES**

11.    Plaintiff resides at 534 Warwick Street, Brooklyn, New York 11207, and from 2002 to April 7, 2022, and at all relevant times hereto, was an employee of Defendants, as defined by all applicable statutes and attendant regulations.

12.    Claimant is a bargaining unit member of the New York State Court Clerks Association ("Union"), a labor organization which is and has been, at all relevant times, the duly authorized collective bargaining representative of the employees employed as clerks of the courts of the State of New York located within the five boroughs of the City of New York.

13.    Defendant UCS is the Judicial Branch of New York State Government established pursuant to Article VI of the New York State Constitution.

14.    Defendant OCA is the administrative office for Defendant UCS established pursuant to Judiciary Law § 212(1)(b), whose principal place of business is 25 Beaver Street, New York, New York 10004.

15.    Upon information and belief, at all times relevant to the instant matter, Defendants constitute an employer as defined by Title VII.

**ALLEGATIONS OF FACTS**

16.    Plaintiff regularly practices Christianity in her everyday life.

17.    She was baptized twice – once as a child and once as an adult, attends weekly prayer service, reads scriptures and prays daily, fasts, and recently attended a religious leadership program.

18.    Prior to her termination, Defendants employed Plaintiff as a court clerk assigned to several courts including N.Y.S. Supreme Court, Civil Division – N.Y. County and Kings County.

19.    On or about August 25, 2021, Respondents issued an announcement that all non-judicial employees (hereinafter "Employees"), including Plaintiff, would have to become

vaccinated against COVID-19 and comply with Mandatory Vaccination Program (hereinafter "Vaccination Program") no later than September 27, 2021, or risk imminent and adverse employment, retirement, and medical consequences.  Annexed hereto and made a part hereof as Exhibit "B" is a copy of the Vaccination Program.

20.     As part of the Vaccination Program, Defendants permitted Employees to request an exemption to receiving such a vaccination (hereinafter "Exemption").

21.     However, Employees were limited to an "either or" amongst religious-based or medically-based reasons for an Exemption.

22.     Defendants unilaterally imposed a narrow submission deadline, and arbitrarily refused to accept Exemption applications and documentation after these artificial deadlines.

23.     Employees who wished to apply for an Exemption would be required to complete a multi-page application in which the Employee, such as Plaintiff, was required to explain their objection to the vaccine and swear to the truthfulness of his/her requested exemption (hereinafter "Exemption Application").

24.     Defendants oftentimes determined that it needed additional information and required many Employees filing for religious-based Exemptions to complete a supplemental form justifying and affirming under penalty of perjury the sincerity of their beliefs (hereinafter "Supplemental Form").

25.     To effectuate the Vaccination Program, Defendants created a Vaccination Exemption Committee (hereinafter "Committee"), which was responsible for processing, evaluating, and determining whether to grant or deny Exemption Applications.

26.     If Exemption Applications were denied, Employees were not afforded any opportunity to appeal or otherwise seek reconsideration.

27.     Rather, Employees' options were, and still are, limited to either complying with the Vaccination Program within two weeks of the date of the denial letter of their Exemption Applications; or not complying, which resulted in the Employee being excluded from the workplace and terminated.

28.     Additionally, Defendants would not allow Employees to submit another Exemption Application based on changed circumstances.

29.     Upon information and belief, the Committee members evaluating and determining Exemption Applications were not given any specialized training in the standards required to determine reasonable accommodations nor supervised by anyone with experience in reviewing and determining reasonable accommodations.

30.     Employees applying for Exemptions, including Plaintiff, were not interviewed by the Committee as part of the Exemption Application process, and were not permitted to speak with Committee members about their Exemption Applications, the accommodation sought, or the basis for denial.

31.     Plaintiff is aware of at least one Employee in a similar job title who applied for a religious-based Exemption premised on her sincerely held Christian beliefs, submitted substantially similar answers as Plaintiff, and was approved by Defendants to undergo weekly COVID-19 testing as an accommodation to the Vaccine Program.

32.     Upon information and belief, Defendants granted at least 300 Exemption Applications submitted by Employees.

**Plaintiff's Working Conditions**

33.     At the time of Plaintiff's hire as a senior court clerk, Defendants did not require COVID-19 vaccination, much less any other vaccine as a condition of employment for Employees.

34.     Plaintiff's career with Defendants is unblemished and she has always received positive evaluations and has never been disciplined.

35.     At the time Plaintiff submitted her religious-based Exemption Application, she was assigned to a back-office trial support position in Room 158, located at 60 Centre Street, New York, New York 10007.

36.     Room 158 is a retrofitted courtroom and during the Pandemic, Plaintiff worked with three to four colleagues with sufficient social distancing.

37.     Beginning as early as April 2020, Plaintiff continued to work for Defendants without vaccination and complied with the masking and weekly testing requirements unilaterally imposed by Defendants.

38.     In fact, even at one point, Defendants assigned her to a separate office at 71 Thomas Street and provided her an individual office.

39.     On days she worked in-person, she was subjected to daily temperature screenings, worked and ate lunch in isolation, and socially distanced herself from her colleagues, supervisors, and managers to comply with the workplace social distancing policy.

**Plaintiff's Exemption Application Process**

40.     Claimant submitted her Exemption Application on or about September 27, 2021. Annexed hereto and made a part hereof as Exhibit "C" are Plaintiff's Exemption Application.

41.     Plaintiff outlined in her Exemption Application the multiple religious reasons she had for being unable to receive the vaccine.  Among these were: (1) specific guidance from the Bible and direction from God through prayer;  (2) a statement asserting that Plaintiff looks to "God and his Son" as her "healer" and in that role, they will protect her from COVID-19; and (3) the fact that it would be defiling the temple of God (her body) to take an unclean vaccine.  *See* Ex. C.

42.     Plaintiff also listed teachings of the Holy Scriptures which she lives and stands by in her life to demonstrate God and her Savior Jesus Christ's healing powers and explained that her belief and faith in God, as her healer, independently cured her from COVID-19.

43.     As a result of His healing power, Plaintiff responded that she has not taken or received any vaccines in her adult life.

44.     Plaintiff has a serious religious obligation to permit God to protect and heal her and to follow God's teachings that one's body is their temple to the best of her ability, and a person must always obey this principle.

45.     If Plaintiff were deliberately to act against God's teachings, she would be going against her faith.

46.     Thus, her religiously informed opposition to foreign substances entering into her body for healing purposes compels her to refuse all COVID-19 vaccinations.

47.     In response to questions 1 and 3 in her Exemption Application, which asked, among others, what medicines, medical treatments and procedures, vaccines and/or foods Plaintiff abstains from due to her religious beliefs, Plaintiff explicitly stated "pork, raw meat and vaccines."

48.     Defendants directed Plaintiff on or about November 10, 2021, to submit Supplemental Form based on the contents of her Application, which she submitted on or about November 16, 2021.   Annexed hereto and made a part hereof as Exhibit "D" are Plaintiff's Supplemental Form.

49.     As part of her Supplemental Form, Plaintiff submitted a letter from her pastor, David W. Hall, and the leader of the True Hope Ministry.

50.     Pastor Hall's letter on behalf of Plaintiff reiterated her beliefs in Christianity and explained that undergoing inoculation would be an intrusion into the human body, which is the

temple of the Holy Spirit, harmful to the body and soul, and is incompatible with the teachings of the Holy Scripture.

51.     Also in the Supplement Form, Plaintiff explained, *inter alia*, that she is a Christian, looks to God as her healer, and in that role, her religion does not permit her to inject foreign substances into her body.

52.     Moreover, Plaintiff affirmed that she routinely boycotts products and companies that support Planned Parenthood or any other organization that endorses or facilities abortion-related services.

53.     On or about December 29, 2022, Defendants denied Plaintiff's Exemption Application by providing a generic response without any rationale, which simply stated: "Your request for a religious exemption to the UCS Vaccination Mandate was considered by the UCS Vaccination Exemption Committee and denied."

54.     The formulaic denial letter is so bereft of detail including who reviewed the application or the specific reason for denial such that it prevented Plaintiff from understanding why her Exemption Application was denied, or from seeking an alternative accommodation to the Vaccination Program.

55.     More significantly, the denial letter fails to state that providing the requested religious accommodation would impose an undue hardship on Defendants.

56.     Moreover, the denial letter fails to state that the Committee determined Plaintiff's beliefs to be insincere; nor could it as the Court System has never had a reason to question Plaintiff's character, credibility, and the sincerity of her religious beliefs.

57.     Additionally, Defendants never contacted Plaintiff or engaged in any good faith interactive process regarding her request for an Exemption before issuing her denial.

58.     As such, Plaintiff received correspondence from Defendants, dated January 10, 2022, declaring Plaintiff unfit for service based on non-compliance with the Vaccination Program.

59.     On January 14, 2022, Plaintiff emailed Defendants asking for an explanation of the denial.

60.     Defendants provided Plaintiff another generic response explaining the exemption review process, which was not specific to Plaintiff, and did not provide any explanation for the basis to deny Plaintiff's Exemption Application.

61.     Additionally, Defendants failed to afford Plaintiff any procedure or process to appeal its denial.

62.     Separately, Defendants refused to reconsider Plaintiff's Exemption Application even after it became publicly apparent that COVID-19 vaccines were not preventing contraction of the virus and individuals with natural immunity possessed, according to some studies, superior immunity to those with the vaccine only.

63.     According to Plaintiff, she was one of many Employees that practices Christianity, however, the other Employees were approved.

64.     As a result, Defendants denial of the Application violates Title VII and reflects the untrained evaluator's personal belief or bias, rather than conformity with federal law.

**EEOC Guidance Regarding Religious Accommodations**

65.     On January 15, 2021, which predates Plaintiff's termination, the EEOC Office of General Counsel issued OLC Control No.: EEOC-CVG-2021-3 (hereinafter "Religious Discrimination Guidance"), which cautioned employers about questioning the religious nature or the sincerity of a particular religious belief, observance, or practice.[1]

---

[1] *See* https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_ftnref42).

66.     Specifically, an employer may only conduct a limited inquiry into the sincerity of a request where the employer has "a *bona fide doubt* as to the basis for the accommodation request." *Id.* (Emphasis added).

67.     The EEOC further cautioned that "employers who unreasonably request *unnecessary or excessive corroborating evidence* risk being held liable for denying a reasonable accommodation request, and having their actions challenged as retaliatory or as part of a pattern of harassment. ...." *Id.* (Emphasis added).

68.     By example, the Religious Discrimination Guidance provides:

> When an employer requests additional information, employees should provide information that addresses the employer's reasonable doubts. That information need not, however, take any specific form. For example, written materials or the employee's own first-hand explanation may be sufficient to alleviate the employer's doubts about the sincerity or religious nature of the employee's professed belief such that third-party verification is unnecessary. Further, since idiosyncratic beliefs can be sincerely held and religious, even when third-party verification is requested, it does not have to come from a clergy member or fellow congregant, but rather could be provided by others who are aware of the employee's religious practice or belief.

Religious Discrimination Guidance, Section 12, Example 31.[2]

69.     Then, on October 25, 2021[3], which also predates Plaintiff's termination, the EEOC published updated technical assistance to its prior guidance, entitled "*What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*"[4], which specifically addressed questions and included recommendations for employers who receive religious objections from employees in response to the employer's mandatory COVID-19 vaccination policy (hereinafter "Technical Assistance").

---

[2] *See* https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination#_ftnref226.
[3] Available at https://www.eeoc.gov/newsroom/eeoc-issues-updated-covid-19-technical-assistance-0.
[4] Available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws.

70.     With respect to whether an employer may require additional information be provided by an employee seeking an accommodation, the Technical Assistance states that "[g]enerally, under Title VII, an employer should assume that a request for religious accommodation is based on sincerely held religious beliefs" because the "sincerity of an employee's stated religious beliefs [] is not usually in dispute" and is "largely a matter of individual credibility."

71.     Additionally, the Technical Assistance states:

> The determination of whether a particular proposed accommodation imposes an undue hardship on the conduct of the employer's business depends on its specific factual context.  When an employer is assessing whether exempting an employee from getting a vaccination would impair workplace safety, it may consider, for example, the type of workplace, the nature of the employee's duties, the number of employees who are fully vaccinated, how many employees and nonemployees physically enter the workplace, and the number of employees who will in fact need a particular accommodation.

Technical Assistance Sec. L.4.

**Discrimination based on Religion**

72.     Plaintiff's religion was known by Defendants.

73.     Plaintiff was qualified for the court clerk title she held and excelled in that role to the benefit and satisfaction of Defendants.

74.     Plaintiff was terminated from her employment with Defendants.

75.     Plaintiff's termination was causally connected to and a direct result of Defendants' refusal to engage in the interactive process and cooperative dialogue and summary denial of her Exemption Application.

76.     Specifically, Plaintiff was terminated based on an arbitrary finding that her Exemption Application did not pass Defendants' religious test for approving Exemptions and based on Defendants' failure to offer alternative accommodations to the Vaccine Program.

77.     However, other similarly situated Employees submitted substantially similar answers as Plaintiff, and their requests were approved.

78.     As a result of Plaintiff's termination, she has suffered pecuniary losses in the form of, *inter alia*, loss of her sole source of income (salary and bonus), loss of health insurance, loss of prescription coverage for necessary and potentially life-threatening medication and for organ donor testing, loss of reputation, loss of housing, loss of consortium, loss of career advancement, loss of opportunity to work a different position for Defendants, loss of the right to reinstatement, loss of accrued and unused time, and potentially, the loss of the right to collect a pension.

79.     Additionally as a result of her termination, Plaintiff suffered damages in the form of, *inter alia*, mental anguish; specifically, Plaintiff began seeking treatment from a psychologist and was diagnosed with anxiety and depression.

80.     Finally, since Plaintiff's unlawful termination, she has continuously and consistently looked for comparable, new employment, but to date, has not been able to secure said employment.

81.     Further, Defendants' insistence on Plaintiff's submission of her Supplemental Form is clearly contrary to the Religious Discrimination Guidance because it includes intrusive questions presuming insincerity from the start, seeks to catch the Plaintiff in an inconsistency, and looks for any reason to deny her Exemption Application.

82.     At all relevant times to the instant matter, Defendants did not have an objective basis for subjecting Plaintiff to an inquisition to assess the credibility of Plaintiff's religious-based reasonable accommodation requests in asking her to complete the Supplemental Form.

83.     This invasive process left Plaintiff feeling violated, harassed, and hurt, and any reasonable person receiving the inquisition would deduce its intended purpose as one carefully calculated to undermine her beliefs and extract information necessary to justify a pretextual denial.

84.     Defendants' process had no legitimate intention of understanding Plaintiff's religious beliefs nor did it involve a good faith effort to reasonably accommodate her.

85.     The Religious Discrimination Guidance is unequivocal that statements from religious authorities in support of accommodations are not required, even for uncommon or idiosyncratic religious beliefs.

86.     The Technical Assistance, when considered along with the Religious Discrimination Guidance, requires that Defendants assume that religious accommodation requests are based on sincerely held religious beliefs.

87.     Even where there is a credible proffered objective basis for questioning the sincerity of a religious belief, an employer's inquiry should be limited, and should not require a statement from the employee's clergy-member or religious authority, or even a fellow congregant.

88.     Therefore, Defendants' action detailed herein demonstrate that Plaintiff's rights, pursuant to Title VII, were violated and she was, in fact, subjected to unlawful discrimination.

**Retaliation Against Claimant for Engaging in Protected Activity**

89.     Here, Plaintiff's invocation of her rights under Title VII was the impetus for her termination.

90.     As stated above, Plaintiff was continuously subject to discriminatory work rules and practices concerning her right to obtain a religious accommodation while employed by Defendants.

91.     When Plaintiff protested the discriminatory denial of her Exemption Application, she was summarily ignored and/or told there is no appeal process, no an ability to seek reconsideration, and no alterative accommodations.

92.     Shortly after invoking her statutorily-protected rights, Plaintiff was notified of her termination.

93.     Accordingly, Plaintiff has established that she engaged in protected activity under Title VII; that Defendants were aware of said activity; that Plaintiff was caused to suffer an adverse employment action; and that there is a causal connection between Plaintiff's invocation of said rights and the Defendants' adverse employment action.

94.     Moreover, Defendants' actions in failing to engage in any meaningful and good faith interactive dialogue with the Plaintiff about possible accommodations and denying her religious accommodation request constitutes interference with and retaliation of her federally protected rights and violates Title VII.

95.     Therefore, Defendants' action detailed herein demonstrate that Plaintiff's rights, pursuant to Title VII, were violated and she was, in fact, subjected to unlawful retaliation.

## Approving Other Employees' Religious Exemption Applications Belies Any Purported Claim of An Undue Hardship

96.     An employer must provide a reasonable accommodation to an eligible employee, unless it would pose an undue hardship.

97.     Where a requested accommodation would result in undue hardship, the employer must offer an alternative accommodation if one is available absent undue hardship.

98.     Defendants denied Plaintiff's Exemption Application based upon unlawful reasons and further failed to offer Plaintiff an alternative accommodation, such as telecommuting, completing a daily COVID assessment questionnaire, undergoing weekly COVID-19 testing, or any combination thereof.

99.     Most egregiously, Defendants did not even engage in a dialogue with Plaintiff regarding an appropriate accommodation, including whether there was an accommodation in lieu of vaccination that would have permitted Plaintiff to work alongside her colleagues whose Exemption Applications were approved.

100. At no point did Defendants indicate or suggest that granting Plaintiff's Exemption Application presented an undue hardship – nor could it – given the fact that it approved many of her colleagues' Exemption Applications for the same or similar reasons.

101. Additionally, Plaintiff's work location has several offices where Employees work by themselves and placing Plaintiff in an office alone, which she had been doing, would not put any other Employees or court users at risk for COVID-19.

102. Not only are theoretical hardships insufficient for Defendants to dodge their duties under federal law, but Defendants also failed even to consider the costless accommodations that could have been provided to Plaintiff that would have allowed her to continue working, such as: (1) allowing Plaintiff to continue rotating via telecommuting and in-person, which could have been mitigated by any sort of testing and masking combination if it became required; (2) allowing Plaintiff to continue providing Defendants with periodic negative COVID-19 tests; (3) allowing Plaintiff to demonstrate her natural immunity to COVID-19 through the presence of antibodies in her system; and (4) any combination of the above options.

103. Finally, mandating Plaintiff to undergo vaccination but not equally doing so towards court users, litigants, and attorneys undermines any purported claim that Defendants' denial was based upon business necessity.

104. Therefore, Plaintiff seeks all lawful remedies under the applicable statute, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this agency deems just and proper.

## FIRST CAUSE OF ACTION
## DISCRIMINATION UNDER TITLE VII (RELIGION)
## AGAINST DEFENDANTS

105. Plaintiff repeats and realleges ¶¶ 1 through 104 of the Complaint as if fully set forth herein.

106.    Title VII prohibits Defendants from discriminating against employees based on their religion. 42 U.S.C. § 2000e-2(a)(1).

107.    This "include[s] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j)

108.    In order to sufficiently allege a *prima facie* case under Title VII: i) an individual demonstrates that he/she is a member of a protected class; ii) an individual demonstrates that his/her employer knew or had reason to know that said individual is a member of a protected class; iii) an individual was caused to suffer from an adverse employment action effectuated by his/her employer; and iv) his/her employer effectuated said adverse employment action as a result of an individual's membership in a protected class.   *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

109.    In evaluating religious accommodation requests, the EEOC guided employers that they may request supporting documentation only if they have an objective basis to question the sincerity of the stated religious basis for the employee's need for accommodation.

110.    Failure to engage the interactive process to find a solution for an exempt employee "is not an independent violation of Title VII, but as a practical matter, such failure can have adverse legal consequences [because] where an employer has made no effort to act on an accommodation request, courts have found that the employer lacked the evidence needed to meet its burden of proof to establish that the plaintiff's proposed accommodation would actually have posed an undue hardship." EEOC Guidance, *Section 12: Religious Discrimination*, Part 12-IV.A.2 (citing *EEOC v. Ithaca Indus., Inc.*, 849 F.2d 116, 118-19 (4th Cir. 1988) (finding that employer's failure to attempt to accommodate, absent any showing of undue hardship, violated Title VII)); *see also*

*EEOC v. Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 (6th Cir. 1991) ("After failing to pursue . . . any other reasonable accommodation, the company is in no position to argue that it was unable to accommodate reasonably [plaintiff's] religious needs without undue hardship on the conduct of its business."

111.   In the instant matter, it is without question that Defendants willfully violated of Title VII.

112.   Plaintiff complained to the Committee and spoke with Defendants about the discrimination against her for seeking a religious accommodation to the Vaccination Program, and Defendants had actual or constructive knowledge of the ongoing discrimination.

113.   Defendants failed to take prompt and appropriate remedial action to prevent or correct further discrimination of Plaintiff.

114.   Defendants failed to engage in a good faith interactive process prior to, much less after, determining that Plaintiff's request for a reasonable accommodation would be denied in violation of Title VII.

115.   Defendants had no objective basis here, and erroneously assumed, that Plaintiff's beliefs were insincere when it evaluated her Exemption Application.

116.   Plaintiff's eventual termination was directly and proximately connected to her religious beliefs and related attempts to have them accommodated.

117.   Plaintiff, at the time of her termination, was dutifully performing her responsibilities, complying with the Defendants' daily and weekly COVID-19 preventative measures (*i.e.*, masking, testing, and social distancing), and was denied a religious accommodation to the Vaccination Program notwithstanding the fact that similarly situated employees – who raised the same sincerely held beliefs as Plaintiff – were approved.

118.    As a result of said termination, Plaintiff has suffered pecuniary losses in the form of, *inter alia*, loss of her sole source of income (salary and contractual emoluments of employment), loss of health insurance, loss of prescription coverage for necessary and potentially life-threatening medication and for organ donor testing, loss of reputation, loss of housing, loss of consortium, and loss of personal and business relationships.

119.    Finally, since Plaintiff's unlawful termination, she has continuously and consistently looked for comparable, new employment, but to date, has not been able to secure said employment.

120.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that she was subjected to a discriminatory employment practices, namely Defendants' refusal to provide a reasonable accommodation and then terminating her was caused by Plaintiff's membership in a protected class of employees, namely her religion.

121.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## SECOND CAUSE OF ACTION
## DISPARATE TREATMENT UNDER TITLE VII (RELIGION)
## AGAINST DEFENDANTS

122.    Plaintiff repeats and realleges ¶¶ 1 through 121 of the Complaint as if fully set forth herein.

123.    Title VII makes it "an unlawful employment practice for an employer to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

124. A *prima facie* case for disparate treatment based on religion requires four elements: (1) membership in a protected class, (2) satisfactory job performance, (3) adverse employment action, and (4) different treatment than similarly situated employees outside the protected class. *Mandell v. Cnty. of Suffolk,* 316 F.3d 368, 379 (2d Cir. 2003).

125. A plaintiff asserting a prima facie case for disparate treatment can do so through either direct or circumstantial evidence. *See Humphrey v. Cnty. of Nassau,* 06-CV- 3682, 2009 WL 875534, at *15 (E.D.N.Y. Mar. 30, 2009).

126. By requesting religious accommodation from Defendants – specifically outlining how the Vaccination Program conflicted with her sincerely held religious beliefs – Plaintiff established herself as a member of a protected class.

127. Defendants implicitly acknowledged that Plaintiff was a member of a protected class here by considering and rejecting her Exemption Application.

128. Plaintiffs successfully completed her job duties without discipline or counseling, which demonstrates unquestionably that she was qualified for the position.

129. Plaintiff suffered an adverse employment action when Defendants placed her in a category of "unfit for duty" and forced to exhaust her leave accruals, and again, when Defendants terminated her after she, on religious grounds, declined to take the COVID-19 vaccine by the end of the "unfit for duty" period.

130. Defendants could have accommodated Plaintiff without any undue hardship, through continued telework, masking/testing, recognition of her natural immunity, or any combination of these options.

131. At the same time, Defendants were discriminating against Plaintiff, they approved religious-based Exemption Applications of other similarly situated employees who responded to the unlawful inquisitions contained in her Supplemental Form with the same answers as Plaintiff.

132.    By approving said requests and permitting them to avoid inoculation by undertaking less invasive measures to limit COVID-19 transmission, Defendants treated Plaintiff worse because without any lawful basis and their actions undermine any legitimate nondiscriminatory reason relating to workplace safety for failing to accommodate Plaintiff.

133.    Additionally, Defendants' utilization of a religious test form to evaluate sincerity and pick apart the beliefs of Employees, including Plaintiff, was an additional instance of direct disparate treatment.

134.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has sufficiently alleged that she was subjected to a disparate treatment, namely Defendants' refusal to provide a reasonable accommodation and then terminating her was caused by Plaintiff's membership in a protected class of employees, namely her religion.

135.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## THIRD CAUSE OF ACTION
### RETALIATION UNDER TITLE VII (RELIGION)
### AGAINST DEFENDANTS

136.    Plaintiff repeats and realleges ¶¶ 1 through 135 of the Complaint as if fully set forth herein.

137.    Title VII also makes it unlawful for "an employer to discriminate against any of [its] employees . . . because [s]he has opposed any practice made unlawful by this subchapter." 42 U.S.C. § 2000e-3(a).

138.    A *prima facie* case for retaliation requires a showing that (1) she engaged in activity protected by Title VII; (2) that an adverse employment action was taken by the employer; and (3)

that a causal link existed between the protected activity and the adverse action.  *See Eldaghar v. City of N.Y. Dep't of Citywide Admin. Servs.*, No. 02-CV-9151, 2008 WL 2971467 (S.D.N.Y. July 31, 2008); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (holding that an employee sufficiently asserts a *prima facie* claim for retaliation under Title VII when she participated in a protected activity, and then suffers an adverse employment action that has a causal connection between engaging in the protected activity and the adverse employment action).

139.    This causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse action.  *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Co.*, 252 F.3d 545, 554 (2d Cir. 2001).

140.    Further, as expressed in the Religious Discrimination Guidance and the Technical Assistance, the EEOC emphasized, once an individual submits a request that outlines sincerely held religious beliefs requiring an exemption, the employer should not persist in an inquisition designed to humiliate and coerce the employee.

141.    Here, Plaintiff engaged in protected activity under Title VII when she sought a religious accommodation from the Vaccination Program that would otherwise require her to violate her sincere religious beliefs.

142.    Defendants also subjected Plaintiff to a religious litmus test because of her request for an accommodation, the answers of which Defendants could later try to use against her.

143.    Defendants' inquisition was not designed to look for a reasonable accommodation for Plaintiff because Defendants never intended to accommodate her.

144.    As a result, she was forced to answer personal questions that she had either already answered or that did not have any bearing on Defendants' duty to provide a reasonable accommodation.

145.    Were it not for Plaintiff's religious beliefs and her Exemption Application, she would not have been subjected to such treatment.

146.    After denying Plaintiff's Exemption Application, Defendants pressured her to capitulate and obtain the COVID-19 vaccine with false information that Defendants could not accommodate her beliefs.

147.    Defendants then labeled her "unfit for duty" and forced to exhaust her leave accruals —a further coercive technique—only to terminate her at the end of the set period.

148.    Defendants labeled her "unfit for duty" and imposed the period of forced exhaustion of accruals with the intent to punish those who sought religious accommodation; Defendants hoped that the constant reminder of termination would result in them abandoning their religious beliefs and surrendering to a coerced injection of a COVID-19 vaccine.

149.    The Vaccination Program and Defendants' failure to comply with Title VII compelled Plaintiff into a period of extreme emotional and psychological distress, by questioning their beliefs and forcing them into compliance.

150.    But for her Exemption Application, Plaintiff would not have experienced the psychological and emotional distress resulting from the inquisition, coerced forfeiture of accruals, and eventual termination, where she was constantly pressured to violate her religious beliefs.

151.    Defendants' actions in forcing those arbitrarily denied accommodation into a category of "unfit for duty" and force them to exhaust their accruals just to terminate them after an arbitrary specified period, and then not bringing them back when it was possible constitutes retaliation in violation of Title VII.

152.    Based upon the foregoing, and given the fact that Plaintiff has satisfied its "minimal burden," *Vuona v. Merrill Lynch & Co., Inc.*, 919 F.Supp.2d 359 (S.D.N.Y. 2013), Plaintiff has

sufficiently alleged that she was subjected to a retaliation, namely Defendants' termination of Plaintiff for her participation of the protected activity of filing for a reasonable accommodation.

153.    Accordingly, Plaintiff seeks all lawful remedies under the applicable statutes, including but not limited to back pay, front pay, compensatory damages, punitive damages, attorneys' fees, administrative costs, and all other relief that this Court deems just and proper.

## STATEMENT OF CLAIM FOR RELIEF

By the actions and omissions described above, Defendants have violated Title VII.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court will:

- Find that Defendants, individually and collectively, willfully violated Title VII by discriminating against Plaintiff for exercising her sincerely held religious beliefs;

- Find that Defendants, individually and collectively, violated Title VII by treating Plaintiff in a disparate manner for exercising her sincerely held religious beliefs;

- Find that Defendants, individually and collectively, violated Title VII by refusing to provide Plaintiff with a reasonable accommodation that accounted for exercising of her sincerely held religious beliefs;

- Find that Defendants, individually and collectively, violated Title VII by retaliating against Plaintiff for engaging in protected activity through seeking religious accommodations;

- Award compensatory damages to Plaintiff for back pay and front pay;

- Award compensatory damages to Plaintiff for the pain, suffering, severe mental anguish, emotional distress, loss of dignity, humiliation, embarrassment, stress and

anxiety, depression, loss of self-esteem, self-confidence, and personal dignity, damages to reputation and livelihood, and any other physical or mental injuries endured by Plaintiff in the amount totaling $1,000,000.s00;

- Award Plaintiff compensatory damages in an amount to be determined at trial to compensate Plaintiff for harm to her professional and personal reputation and loss of career fulfillment;

- Award of damages for any and all other monetary and/or non-monetary losses suffered by Plaintiff in an amount to be determined at trial;

- Award Plaintiff punitive damages in an amount to be determined at trial;

- Award Plaintiff all reasonable attorneys' fees and costs, including expert fees, of this action and ensuring compliance with any order for injunctive relief, as provided for in 42 U.S.C. § 1988 and 42 U.S.C. § 2000e-5(k); and

- Grant Plaintiff such other and further relief as this Court deems appropriate and equitable, as may be required in the interest of justice.

Dated: New York, New York
      November 15, 2022

**PITTA LLP**

By: _Joseph Bonomo_____
        STEPHEN MC QUADE, ESQ.
        JOSEPH M. BONOMO, ESQ.
        *Attorneys for Plaintiff*
        120 Broadway, 28th Floor
        New York, New York 11554
        212-652-3890
        smcquade@pittalaw.com
        jbonomo@pittalaw.com