```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
TRINA ADAMS,                                                            :
                                                                        :
                                      Plaintiff,                        :
                                                                        :        22-CV-9739 (JMF)
                         -v-                                            :
                                                                        :        OPINION AND ORDER
NEW YORK STATE UNIFIED COURT SYSTEM et al.,                             :
                                                                        :
                                      Defendants.                       :
                                                                        :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

      Plaintiff Trina Adams ("Adams") was a court clerk in the Civil Division of the New York State Supreme Court, which is operated by Defendants New York State Unified Court System and the Office of Court Administration (together, "Defendants"). In 2021, Adams applied for a religious exemption from Defendants' COVID-19 vaccination mandate, asserting that the vaccination violated her sincerely held Christian beliefs. Defendants denied the application and, months later, fired Adams for failure to get vaccinated. As a result of these events, Adams brings claims for religious discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*. Defendants now move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss her Complaint. For the reasons that follow, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

      The following brief factual summary is drawn from the facts alleged in the Complaint, which are taken as true and construed in the light most favorable to Adams for purposes of this motion, as well as from documents attached to, and incorporated by reference in, the Complaint. *See, e.g.*, *Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018).

Adams was employed as a court clerk in the New York Supreme Court, most recently in New York County. ECF No. 1 ("Compl."), ¶¶ 18, 35. On August 25, 2021, in response to the then-ongoing COVID-19 pandemic, Defendants issued a vaccine mandate, requiring all court employees to get vaccinated by September 27, 2021. *Id.* ¶ 19. Employees could, however, request exemptions from the mandate for medical or religious reasons. *Id.* ¶¶ 20-21. On September 27, 2021, using Defendants' own form, Adams submitted her exemption application, in which she affirmed that vaccination was "contrary to" her "sincerely held religious beliefs and practices." ECF No. 1-4 ("Application"), at 2. Adams attached to her application a form letter from Pastor David W. Hall of True Hope Ministry, located in San Clemente, California. Application at 6-9.[1] The form letter stated, among other things, that "intrusions into the human body . . . are antithetical and incompatible to the teachings of the Holy Scripture. *Such intrusions include*, but are not limited to, *masks, covid testing* and vaccines." *Id.* at 6 (emphasis added). In her application, however, Adams specifically noted that she was "willing to accept all reasonable alternatives such as *mask wearing*, work assignment changes or *weekly testing* as long as they don't interfere with my sincerely held religious beliefs." *Id.* at 3 (emphasis added).

A month and a half later, on November 10, 2021, Defendants directed Adams to submit a supplemental form (the "Supplemental Form") seeking additional information about her religious beliefs. Compl. ¶ 48; *see also* ECF No. 1-5 ("Supplement"). The Supplemental Form called for Adams to complete Section A if she had "indicated that concerns surrounding the COVID-19 vaccine and its connection to abortion and/or fetal cell lines prohibit[ed her] from receiving a vaccination"; it instructed her to complete Section B if she had "indicated that" she "object[ed]

---

[1] Adams alleges that she attached the form letter from Pastor Hall to a later submission, Compl. ¶¶ 49-50, but that allegation is belied by the documents she attaches to her Complaint.

2

to the COVID-19 vaccine because [she] abstain[ed] from medicine or vaccines in general due to [her] religious faith." Supplement at 1. Adams did not complete Section A, noting that the questions "violate[d]" her "rights under the Americans with Disabilities Act (ADA)." *Id.* at 3. In Section B, she stated that she had abstained from vaccines for "well over ten years" and that she did so because, "[a]s a Christian," she "put[s] [her] faith in God to heal [her]," citing three passages from Christian Scripture. Supplement at 3-5. She refused to answer one question in Section B — about whether she had received any other vaccines since turning eighteen years of age — on the ground that she did not have to answer it under the ADA. *Id.* at 6.

On December 29, 2021, Defendants denied Adams's exemption request. Compl. ¶¶ 53-56. A few weeks later, on January 10, 2022, Defendants advised Adams that she was "unfit for service" because she had failed to comply with the vaccine mandate and placed her on administrative lead (with pay). *Id.* ¶ 58. Adams requested an explanation for Defendants' decision to deny her exemption application, but she received a generic response without details specific to her. *Id.* ¶¶ 59-60. Adams claims that other similarly situated employees received religious exemptions, *id.* ¶ 77, although she does not provide any details about these alleged employees. On or about April 4, 2022, Defendants terminated Adams's employment for failing to "comply with the Vaccination Mandate." *Id.* ¶ 2. Adams then filed a complaint with the Equal Employment Opportunity Commission and received a right-to-sue letter on April 19, 2022. *Id.* ¶ 9. Thereafter, she timely commenced this lawsuit. *Id.*

## LEGAL STANDARDS

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Giunta v. Dingman*, 893 F.3d 73, 79 (2d Cir. 2018). A court will not dismiss

any claims unless the plaintiff has failed to plead sufficient facts to state a claim to relief that is facially plausible, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) — that is, one that contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). More specifically, a plaintiff must allege facts showing "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Further, if the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [those claims] must be dismissed." *Id.* at 570. Where, as here, a plaintiff brings claims of employment discrimination, however, the facts "alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

## DISCUSSION

Adams's Complaint is not a model of clarity, but she appears to bring three claims pursuant to Title VII, two for religious discrimination — a failure to accommodate claim and a disparate treatment claim — and one for retaliation. *See* Compl. ¶¶ 105-53; *see also E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771, 774 (2015) (noting that a "failure to accommodate" claim under Title VII is a species of disparate treatment claims).

The Court will discuss claim each in turn.

A. **Failure to Accommodate**

Adams's first cause of action is for religious discrimination based on Defendants' alleged failure to accommodate her religious beliefs. Compl. ¶¶ 107, 109, 115. To make out a *prima facie* case for religious discrimination based on Defendants' failure to accommodate, Adams must allege that "(1) [she] held a bona fide religious belief conflicting with an employment requirement; (2) [she] informed [her] employers of this belief; and (3) [she was] disciplined for failure to comply with the conflicting employment requirement." *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) (internal quotation marks omitted). Significantly, Defendants do not dispute that Adams satisfies the first and third prongs of this test; they argue only that she did not sufficiently inform them of her religious belief. ECF No. 18 ("Defs.' Mem."), at 6-9; ECF No. 28 ("Defs.' Reply"), at 1-2. But that argument borders on frivolous. Adams's exemption application — using Defendants' own form — advised that vaccination was "contrary to" her "sincerely held religious beliefs and practices," Application at 2, and the form letter attached to the application, from "True Hope Ministry," invoked the "Christian worldview regarding intrusions into the human body," *id.* at 6. Further, in the Supplemental Form, Adams explicitly stated that she had abstained from vaccines because, "[a]s a Christian," she "put[s] [her] faith in God to heal [her]," citing three passages from Christian Scripture. Supplement at 3-5. That is more than enough to satisfy the second prong of the *prima facie* test. *See, e.g.*, *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1439 (9th Cir. 1993) (requiring that a plaintiff provide his employer "only enough information about an employee's religious needs to permit the employer to understand the existence of a conflict between the employee's religious practices and the employer's job requirements"); *Corrales v. Montefiore Med. Ctr.*, No. 22-CV-3219 (LAP), 2023 WL 2711415, at *6 (S.D.N.Y. Mar. 30, 2023) ("[The plaintiff] alleged that she notified [the defendant] about

5

her particular religious objections to the COVID-19 vaccine by notifying [a supervisor] of her desire to request a religious exemption to the vaccination policy."); *Riley v. N.Y.C. Health & Hosps. Corp.*, No. 22-CV-2736 (JGK), 2023 WL 2118073, at *4 (S.D.N.Y. Feb. 17, 2023) (noting that the plaintiff had made out a *prima facie* case of religious discrimination under Title VII by alleging, inter alia, that she had requested a religious exemption from the vaccine mandate). Thus, Defendants' motion to dismiss Adams's first claim must be and is denied.[2]

## B. Disparate Treatment

Next, Adams alleges that Defendants terminated her because of her religion. Compl. ¶ 134. This claim is governed by the familiar burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *see Mussallihattillah v. McGinnis*, 684 F. App'x 43, 47 (2d Cir. 2017) (summary order). Under this standard, Adams must allege in the first instance that she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) "the adverse action

---

[2] Although Defendants are explicit that their sole challenge to Adams's claim relates to prong two of the *prima facie* test, their real beef seems to be that Adams failed to complete all of the questions on the Supplemental Form, which, they say, prevented them from making a merits-based decision on her accommodation request. *See* Defs.' Mem. 6-7; Defs.' Reply 3. Defendants argue that they were "unable — and not required — to provide Plaintiff a reasonable accommodation when she refused to provide the requested information." Defs.' Mem. 6-7 (citing *Elmanayer v. ABF Freight Sys.*, No. 98-CV-4061 (JG), 2001 WL 1152815, at *5 (E.D.N.Y. Sept. 20, 2001); *Cosme v. Henderson*, No. 98-CV-2754 (VM), 2000 WL 1682755, at *6 (S.D.N.Y. Nov. 9, 2000)). But whether a defendant offered a reasonable accommodation and whether the plaintiff participated in good faith in the interactive process surrounding a reasonable accommodation are distinct questions from whether the plaintiff has established a *prima facie* case. *See Baker*, 445 F.3d at 546 ("Once a prima facie case is established by the employee, the employer must offer . . . her a reasonable accommodation, unless doing so would cause the employer to suffer an undue hardship." (cleaned up)). Whether Defendants offered Adams any accommodation, let alone a reasonable accommodation; whether Adams's submissions cast doubt on the sincerity of her claimed religious beliefs; and whether Adams's failure to answer every question on the Supplemental Form (especially given that the Form itself did not require completion of both sections) defeats her claim are questions for another day.

occurred under circumstances giving rise to an inference of discrimination." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (cleaned up). If she does so, "the burden then shifts to the employer to articulate a legitimate, non-discriminatory . . . reason for the adverse action." *DeMuth v. U.S. Small Bus. Admin.*, 819 F. App'x 23, 25 (2d Cir. 2020) (summary order). "If the employer satisfies its burden, the plaintiff must then show that the reasons presented were a pretext for discrimination . . . ." *Id.* (internal quotation marks omitted). At this early stage of the litigation, however, Adams need "only give plausible support to a minimal inference of discriminatory motivation"; she need not plausibly allege that "the adverse employment action was attributable to discrimination." *Littlejohn*, 795 F.3d at 311.

Adams fails to allege facts that plausibly support even a minimal inference of discriminatory motivation. Adams seeks to do so by comparing herself to similarly situated employees who were granted religious exemptions. ECF No. 26 ("Pl.'s Opp'n"), at 20-22. Such comparison is certainly a "recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case," *Ruiz v. County of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (emphasis added), but Adams fails to allege any appropriate comparators. Quite the opposite. Adams alleges that "she was one of many [e]mployees [who] practice[d] Christianity" and that "the other [e]mployees were approved [for exemptions]." Compl. ¶ 63; *see id.* ¶ 77 ("[O]ther similarly situated [e]mployees submitted substantially similar answers as Plaintiff, and their requests were approved."). Far from helping Adams, these allegations are fatal to her disparate treatment claim. That is, Adams herself alleges that employees in the same protected class — that is, people who practice Christianity — were granted religious exemptions. *See*

Defs.' Reply 6.³  That *defeats* any inference of discrimination on the basis of her religious belief. *See, e.g.*, *Toussaint v. N.Y. Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 212-13 (S.D.N.Y. 2017) (explaining that a plaintiff "cannot establish that he was terminated in circumstances giving rise to an inference of discrimination where the similarly situated comparators are of the same protected class" (citing cases)), *aff'd*, 706 F. App'x 44 (2d Cir. 2017) (summary order).  Adams alleges no other facts that could conceivably raise a minimal inference of discrimination.  Accordingly, Defendants' motion to dismiss Adams's second cause of action must be and is granted.

## C. Retaliation

Finally, Adams alleges that she was terminated because she sought a religious accommodation.  Compl. ¶¶ 141, 145, 150, 152.  To establish a claim of retaliation under Title VII, a plaintiff must, at a minimum, demonstrate that (1) she engaged in a protected activity; (2) the employer took adverse action against the plaintiff; and (3) there was a causal connection between the protected activity and the adverse employment action.  *See Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 391 (2d Cir. 2020).  Defendants argue that Adams's request for an exemption does not qualify as "protected activity" within the meaning of Title VII, *see* Defs.' Mem. 11-12,

---

³ In connection with her memorandum of law, Adams submitted a declaration stating that her "colleagues, working in similar titles and at work locations, and subject to the same work rules and supervisors, both some of the same religious faith and some of other faiths and denominations, submitted Exemption Applications with similar response to that of [Adams] but were instead approved for accommodations." ECF No. 27, ¶ 19(l); *see also* ECF No. 27-13 (exemption approval for an unnamed employee).  Adams cannot, however, amend her "complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss." *K.D. ex rel Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013); *accord Rincon v. Covidien*, No. 16-CV-10033 (JMF), 2017 WL 2242969, at *2 (S.D.N.Y. May 22, 2017).  In any event, even if Adams had included these allegations in her complaint, they would do nothing to bolster her case.  If anything, they illustrate the neutral nature of Defendants' religious exemptions policy as Adams herself alleges that employees of the same religious faith were approved for exemptions.

but the Court need not and does not decide that question because, even if it did, Adams fails to establish a causal connection between her request and her termination. Defendants issued their vaccine mandate on August 25, 2021, Compl ¶ 19, and specifically noted — before Adams sought an exemption — that failure to comply with the mandate *or* to receive an exemption could result in termination, ECF No. 1-3, ("Vaccine Policy"), at 6. When Adams failed to comply, Defendants acted in compliance with their previously announced policy. Put differently, Adams's termination followed ineluctably from the policy that Defendants announced *before* Adams applied for an exemption; it was neither personal to her nor based on any protected activity. In other words, it was set in motion *before* she requested a religious accommodation. "It is well-settled that an adverse employment action cannot serve as the basis for a retaliation claim if the action was set in motion before a plaintiff engaged in protected activity." *Belton v. Borg & Ide Imaging, P.C.*, 512 F. Supp. 3d 433, 446 (W.D.N.Y. 2021) (cleaned up); *see, e.g.*, *Cayemittes v. City of N.Y. Dep't of Hous. Pres. & Dev.*, 974 F. Supp. 2d 240, 262 (S.D.N.Y. 2013) ("If an employer's conduct before and after an employee complaint is consistent, the post-complaint conduct is not retaliatory." (internal quotation marks omitted)), *aff'd* 641 F. App'x 60 (2d Cir. 2016) (summary order).[4]

---

[4]  Notably, Adams does not contest the point, arguing only that her termination was temporally proximate to her protected activity. *See* Pl.'s Opp'n 24-25. But even that is not true, as Adams submitted her request for religious accommodation on September 27, 2021, and was not terminated until April 7, 2022 — over six months later. *See, e.g.*, *Wojcik v. Brandiss*, 973 F. Supp. 2d 195, 216 (E.D.N.Y. 2013) (concluding that "nearly six months" between protected activity and termination precluded a temporal proximity argument); *Ragin v. E. Ramapo Cent. Sch. Dist.*, No. 05 CIV. 6496 (PGG), 2010 WL 1326779, at *24 (S.D.N.Y. Mar. 31, 2010) (noting that "many courts in this circuit have held that periods of two months or more defeat an inference of causation" for a relation claim, and citing cases), *aff'd*, 417 F. App'x 81 (2d Cir. 2011) (summary order).

More broadly, Adams's own allegations establish that her religious exemption application was not a but-for cause of her termination. *See Vega*, 801 F.3d at 90 (holding that a "plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action"). Instead, the Complaint makes plain that the cause was her non-compliance with the vaccine mandate. *See* Compl. ¶ 58 (Adams was declared "unfit for service based on non-compliance with the Vaccination Program"); *id.* ¶ 147 (Adams was terminated after Defendants determined she was unfit for duty). In other words, even if Adams had not submitted the exemption application at all, she still would have been terminated based on her failure to get vaccinated. *See* Vaccine Policy at 6. For these reasons, Defendants' motion to dismiss Adams's retaliation claim must be and is granted.[5]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Specifically, her claims of disparate treatment and retaliation are dismissed, while her claim for failure to accommodate survives.

That leaves the question of whether Adams should be granted leave to amend, which she does request. Pl.'s Opp'n 25. Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019). Here, there are several reasons to reject Adams's request. First, the Court already granted Adams an opportunity to amend and explicitly warned that it would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." ECF No.

---

[5] The Court need not and does not reach Defendants' alternative argument that Adams did not engage in protected activity. *See* Defs.' Mem. 11-12; Defs.' Reply 8-9.

19; *see, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*." (citing cases)). Second, Adams's request for leave to amend is pro forma; she does not suggest any facts in her possession that would remedy the defects in her claims. *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if [it] fails to specify how amendment would cure the pleading deficiencies in [its] complaint."). Finally, the problems with Adams's two dismissed claims are substantive; indeed, her own allegations doom her claims. Accordingly, amendment would almost certainly be futile. *See, e.g.*, *Roundtree v. N.Y.C.*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (citing cases). Accordingly, the Court declines to grant Adams leave to amend.

Unless and until the Court orders otherwise, Defendants shall answer Adams's remaining claim within **three weeks** of the date of this Opinion and Order. In addition, the initial pretrial conference is hereby RESCHEDULED for **September 14, 2023**, at **9:00 a.m.** The conference will be held remotely in accordance with the Court's Individual Rules and Practices in Civil Cases, available at https://nysd.uscourts.gov/hon-jesse-m-furman. The parties are reminded that, no later than the Thursday before the initial pretrial conference, they are required to submit a joint status letter and proposed Case Management Plan. See ECF No. 10.

The Clerk of Court is directed to terminate ECF No. 16.

SO ORDERED.

Dated: August 4, 2023
      New York, New York

                                              JESSE M. FURMAN
                                         United States District Judge